Sinnott, Judge,
delivered the opinion of the court:
Plaintiff herein seeks to recover the actual losses sustained by it, growing out of the cancellation of a contract, under the authority of an act of Congress approved June 15, 1917, 40 Stat. 182. The contract in question, bearing the number 2067, was entered into by plaintiff and defendant, through Josephus Daniels, Secretary of the Navy, and bore date the 19th day of September, 1918, and called for the manufacture of 800,000 4" projectiles, at the price of $7.97 *148 each, 1,000 to be delivered on or before December 28, 1918, and 133,000 each month thereafter until completion.
At the time said contract was entered into plaintiff was engaged in the manufacture of 4" projectiles for the Navy-under another contract calling for the manufacture of 560,-000 projectiles, which contract was amended on October 15, 1917, by increasing the number of projectiles to be manufactured by 900,000.
Plaintiff’s uncontradicted testimony was that its plant was the only one in the country which could successfully make 4" projectiles, and that it was depended upon by defendant to supply this projectile.
About July 1, 1918, the officers of plaintiff received information through the Government inspectors at plaintiff’s plant which justified them in believing that another order would be given plaintiff for 800,000 4" projectiles, either by way of amendment to the existing contract or by a new contract. At the same time plaintiff was urged by the inspectors to keep itself supplied with materials for the successful delivery of said projectiles.
On July 30, 1918, plaintiff answered a letter of July 25, 1918, from the Bureau of Ordnance, Navy Department, relative to the manufacture of said 800,000 projectiles, wherein plaintiff proposed to manufacture the same for $7.97 each. In reply to plaintiff’s said letter the Bureau of Ordnance, Navy Department, informed plaintiff by letter of August 24, 1918, that the Navy Department had decided that said .projectiles would be purchased after competitive bidding, and that bids would be opened September 11, 1918, whereupon plaintiff filed its bid, and on September 17, 1918, the Secretary of the Navy notified plaintiff, by letter, that its bid had been accepted, and that drafts of contract and bond would be sent to plaintiff at an early date. The contract herein involved, dated September 19, 1918, was thereafter executed by plaintiff and by defendant through the Secretary of the Navy.
After receiving the information from the Government inspectors which justified plaintiff in believing that it would receive an order for 800,000 projectiles, and after being urged by the inspectors to keep itself supplied with mate *149 rials for the successful delivery of said shells, plaintiff proceeded to make purchases of some of the materials necessary for the manufacture of said shells, and also made such purchases promptly after the contract was awarded. On August 14,1918, plaintiff placed an order for 500 tons of manganese. It was the approximate amount required in the manufacture of the 800,000 projectiles. The manganese was delivered to plaintiff. The contract price paid by plaintiff therefor was $137,820.35. On April 26, 1919, when the contract was canceled, the difference between the contract cost price of the manganese and the market value was $70,000.
On October 29, 1918, plaintiff placed an order for 9,000 gross tons of pig iron, and on October 30, 1918, a further order for 9,000 gross tons of pig iron. Said pig iron was necessary for the performance of the contract and was delivered to plaintiff, for which plaintiff paid the sum of $631,800. The difference between the market value when the contract was canceled and the contract price for the 18,000 tons of pig iron was $98,100.
Plaintiff also gave orders for tool steel of various sizes. A large part of this tool steel was ordered subsequent to the date of the contract, but a small part thereof was ordered before said contract was entered into but subsequent to the time plaintiff received the information about the forthcoming order for projectiles referred to in Finding II. On April 26, 1919, the date of the cancellation of the contract, the difference between the market value and the price plaintiff paid for the tool steel was $20,094.44. Between the 1st day of August, 1918, and the 15th day of November, 1918, plaintiff expended for labor in the manufacture of tools required to be used in the production of projectiles the sum of $79,868.91; 75 per cent of the amount so expended, or $59,901.69, was applicable to the contract herein involved. Said tools were not of any value in commercial work and subsequent to the cancellation of the contract had no value except as scrap tool steel. It does not appear from the evidence what value, if any, said tools had as scrap.
Between the 1st day of July, 1918, 'and the 16th day of November, 1918, plaintiff bought supplies consisting of castings, grinding wheels, drills, checks, and hobbs, for which *150 plaintiff paid the sum of $35,923.22; 75 per cent of this amount, or $26,942.17, was expended for supplies applicable to the contract in this case. On the cancellation of the contract the salvage value of said supplies was $6,735.54. The difference between the cost and the salvage value was $20,206.63.
On the 7th day of August, 1918, plaintiff placed an order for a pump at a cost of $10,000. Said pump was to be used by plaintiff in the manufacture of the 800,000 projectiles covered by the contract. The pump was not delivered, and subsequent to the cancellation of the contract plaintiff paid the sum of $1,533.98 to cancel the contract for said pump.
On November 16, 1918, the Chief of the Bureau of Ordnance, Navy Department, sent plaintiff the telegram referred to in Finding VII, notifying plaintiff that steps would be taken for the cancellation of the contract in question. Upon receipt of said telegram plaintiff discontinued all preparations for the manufacture of projectiles called for under said contract and incurred no further obligations on account of the same. By letter of April 26, 1919, referred to in Finding VII, Franklin D. Roosevelt, Acting Secretary of the Navy, notified plaintiff that the contract herein involved, number 2067, was canceled.
The amounts which we have allowed plaintiff are as follows:

The above amounts allowed plaintiff are plaintiff’s expenditures, which were necessary to perform the contract, less the market value of the pig iron, ferromanganese, and tool steel, kept by the plaintiff, and less the salvage value of supplies.
*151 The case of Barrett Company v. United States, 273 U. S. 227, is authority for allowing plaintiff the amount above set forth. In this case the Supreme Court said:
“Just compensation for canceling the contract requires that the contractor shall be made whole and recover the expenditures necessary to perform the contract. It would have been no defense, had the company failed to perform and the Government had sued for a breach, that the plant erected upon the estimate was not sufficient to do what was agreed. That was the contractor’s risk. * * *
“ What the company is entitled to is just compensation for the contract which was taken from it, and under the cases just cited it should certainly be credited with the outlay which it can show there was reasonable ground for making in order to fulfill its engagements.”
We have not allowed plaintiff the handling charges for the pig iron and manganese mentioned in Finding VIII, for the reason that plaintiff used this material in its other operations. Had plaintiff not kept this material, it would have had to purchase other pig iron and manganese and pay for the handling charges thereof.
Defendant contends that because plaintiff kept the pig iron, manganese, and other supplies, and consumed them in its operations on other contracts' during the year 1919 and thereafter, there is no showing that plaintiff lost anything by reason of the purchase of these materials.
If we understand defendant’s contention, it is that plaintiff may have made a profit in the use of the materials retained on its other contracts. In this contention defendant loses sight of the issue in this case, namely, just compensation to plaintiff for the cancellation of the contract in question under the act of June 15, 1917, 40 Stat. 182. Under this act, according to the decision in Barrett Company v. United States, supra, defendant is entitled “ to be made whole and recover the expenditures necessary to perform the contract,” and “ should certainly be credited with the outlay which it can show there was reasonable ground for making in order to fulfill its engagements.”
Under the ruling in the Barrett case, supra, had the defendant taken over the materials on hand when the con *152 tract was canceled, which the evidence does not show it made any effort to do, it would have had to repay plaintiff for the expenditures made therefor, and the plaintiff would have had to purchase other similar materials to complete its other contracts. No one, in this event, would contend that defendant had any concern in the profit or loss of plaintiff on the materials used in these other contracts. The retention by plaintiff, and the use in its other operations, of certain materials purchased for the performance of the contract in question, and crediting defendant with the market value thereof as of the date of the cancellation of the contract is analogous to the purchase of said maternal referred to above, in which the defendant could have no concern in the profit or loss thereon.
Judgment should be awarded in favor of the plaintiff. It is so ordered.
Green, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.